INTERSTATE COMMERCE COMMISSION v. CHICAGO, B. & Q. R. CO. et al.

(Circuit Court, N. D. Illinois, N. D.   December 4, 1899.)

No. 25,101.

CARRIERS—REASONABLENESS OF RATES—TERMINAL CHARGES.

The action of railroads entering Chicago in dividing their charges on live stock shipped to that city, which previously included delivery of the stock at the stock yards, so as to make a separate rate for the haul to points on their lines and a terminal charge covering its transfer from their own tracks to the stock yards, is not only legal, but desirable, as relieving shippers whose stock does not go to the yards from payment of the terminal charges; hence, where the terminal rate is just and reasonable in itself, it is not unlawful.

This was a petition by the interstate commerce commission for an order enjoining the several railroad companies defendant to cease and desist from making certain charges which the commission had declared to be unreasonable and unjust.   On final hearing.

S. H. Bethea, Dist. Atty., W. A. Day, and S. H. Cowan, for petitioner.

Chester M. Dawes, Robert Dunlop, Robert Mather, Sidney F. Andrews, William Brown, Charles B. Keeler, Lloyd W. Barrows, and Frank B. Kellogg, for defendants.

KOHLSAAT, District Judge.   On the 3d day of March, 1899, the interstate commerce commission filed its petition in this court for the enforcement of its order made on the 20th day of January, 1898, requiring the defendants, respectively, to "cease and desist, on or before April 1, 1898, from charging, demanding, collecting, or receiving

the sum of $2 per car load of live stock as compensation for terminal services rendered in making delivery of live stock at the stock yards of the Union Stock Yards & Transit Company, in the city of Chicago, state of Illinois, which said charge is found and held, in and by said report and opinion of said commission, to be unreasonable, unjust, and unlawful." This proceeding is had in accordance with the interstate commerce act, and, in a proper case, this court would grant the prayer of the petition.

Prior to June 1, 1894, shippers of live stock to Chicago over the lines owned or operated by the respective defendants might, at their option, have had the same delivered, without extra charge, to the Union Stock Yards, which lie within the limits of that city. To all intents and purposes, the rates from Missouri river live stock centers then absorbed all the terminal charges. The defendants had no adequate facilities for handling stock upon their own lines. The report and findings of the commission held the stock yards to have been the common depot of the several defendants for the delivery of stock consigned to Chicago. With that finding I concur.

Prior to the year 1893, the stock-yards company, which owns or controls the tracks required for the movement of freight between the tracks of the several defendants and the stock yards, had given to the defendants the free use of said tracks; the carriers being at the expense only of the actual cost of haulage and handling. In 1893 the stock-yards company assumed the entire work of hauling cars from the intersection of said stock-yards tracks with defendants' lines, respectively, to the yards, and charged the defendants therefor on the basis of what it had cost defendants theretofore for the same service. On June 1, 1894, the stock-yards company added to this sum a trackage charge of 40 cents per car each way, then for the first time imposed. Partly to meet this new expense, and partly to reimburse themselves for the actual outlay theretofore borne by them in delivering at the stock yards, the defendants, respectively, by concerted action, duly filed schedules of new rates to that point, with the commission, as required by the act, whereby they created a rate to points on their lines in Chicago, and a terminal charge to cover the expense of delivering stock from their tracks to the said stock yards. This terminal charge was fixed at $2 per car. The trackage charge above referred to amounted to the sum of 80 cents per car. Thus, the former through rate to the stock yards, taking the Chicago and terminal rates together, was arbitrarily increased in the sum of $1.20 per car. Since that time the Chicago rate has been greatly reduced, so that the question now presented is whether the imposition of the terminal charge of $2 upon the theretofore existing Chicago rate was unlawful and unjust.

Upon the hearing of defendants' demurrers to said petition (94 Fed. 272), this court held that it was entirely within the power of petitioner, in a proper case, to require the defendants to cease and refrain from the enforcement of a freight rate which the petitioner found to be unjust and unlawful, even though the commission has no power to prescribe a rate. Manifestly, if the defendants did effect a segregation of their freight charges from Missouri river and other

stock-shipping centers to the Chicago stock yards, so that the Chicago rate did not include the expenses or charges incurred in the delivery at the stock yards from the tracks of defendants, and did make a special rate from their tracks to the stock yards, there can be no question of double charge involved.    Unless the one or the other of these charges, in and of itself, is unjust and unlawful, or the same was illegally made, the petitioner's contention must fail.    The justness and fairness of the Chicago rate is not called in question in this proceeding.

The act provides in what manner rates may be changed.    The defendants have complied with that requirement, and there can be no doubt but that they have, as they legally might, divided up or segregated their Chicago and terminal charges.    That such segregation could have been legally accomplished, and was both advisable and desirable, was unequivocally held in the case of Walker v. Keenan, 19 C. C. A. 668, 73 Fed. 758.    This, too, is the spirit of the Covington Stock-Yards Case, 11 Sup. Ct. 461, 35 L. Ed. 37.    It is just and reasonable that one who ships to points on the tracks of the several defendants in Chicago should not be required to pay a rate which is based in part upon the actual cost to the carrier of delivery at the stock yards from the point to which he ships.    He should not be required to go to the stock yards to get his money's worth.

Therefore the only question remaining is as to the lawfulness and justice of this terminal charge, in and of itself.    The petitioner admits that, if it is to be considered by itself, it must be held to be reasonable, and therefore just and lawful.    Having held that it must be so considered, there remains no alternative but to deny the prayer of said petition, and the same is denied.    In view of the above, it becomes unnecessary to pass upon the question as to whether or not this cause is properly within the interstate commerce act.